THE COMMON COUNCIL OF THE CITY OF GRAND RAPIDS
v. THE BOARD OF PUBLIC WORKS OF THE
CITY OF GRAND RAPIDS.

[Two cases.]

*Municipal corporations—Public improvements—Authority of common council and board of public works.*

1. The authority given to the board of public works of the city of Grand Rapids, by section 8 of Act No. 321, Laws of 1873, to determine as to the *particular kind and quantity* of materials to be used in the construction of any public work the construction of which the common council has declared to be a necessary improvement, has reference to *detail*, and not to the *general character* of the work.

2. It is unquestionably the duty of the common council to avail itself of whatever information or knowledge the board of public works possesses in determining the general character of a public work, but the authority for the expenditures necessary to its construction must originate with the council, and includes the right to determine the question of cost, dimensions, and general character.

87 MICH—8.

*Mandamus.* Submitted June 30, 1891. Granted July 28, 1891.

Relator applied for *mandamus* to compel respondent to proceed with the work of paving certain streets in the city of Grand Rapids. The facts are stated in the opinion,

*William Wisner Taylor,* city attorney, for relator.

*More & Wilson,* for respondent, contended:

1. Under the charter, the cost of street improvements is paid by special or local assessments levied upon the property benefited, and the validity of these assessments depends upon the strict conformity to law with which all the preliminary steps are taken. Among these preliminary steps, none is more important than those required to be taken by the board of public works; and surely the determination of the kind and quantity of material to be used in improving a street is as essential to a valid assessment as any act required of the board. If, then, this act of determination by the board is essential to the validity of a tax, it is a duty the performance of which is imperative. It cannot be avoided by the board, nor can it be delegated to or assumed by any other body or individual; citing *Baisch v. City of Grand Rapids,* 84 Mich. 666.

2. In the case at bar the council declared the grading and graveling of the designated portion of Grandville avenue, with vertical stone curb and paved gutters, a necessary public improvement. Here the kind of material to be used is determined by the council, and nothing is left to the board but to adopt and record that determination as its own. This is a usurpation of the functions of the board, and a violation of the clear intent of the law.

McGRATH, J. Relator asks for writs of *mandamus* to compel respondent to proceed with the work of certain pavements in the city of Grand Rapids.

Under the charter of the city of Grand Rapids, the

abutting owner pays the cost and expense of all paving. The charter provides that—

" The common council shall have the care and supervision of the highways, streets, bridges, lanes, alleys, parks, and public grounds in said city, and it shall be their duty to give directions for the repairing, preserving, improving, cleansing, and securing of such highways, bridges, lanes, alleys, parks, and public grounds, and cause the same to be repaired, cleansed, improved, and secured from time to time as may be necessary; to regulate the roads, streets, highways, lanes, parks, and alleys already laid out, or which may hereafter be laid out, and to alter such of them as they shall deem inconvenient, subject to the restrictions contained in this title."

Section 2 of title 6 provides that—

"The board of public works of said city shall have power and are empowered to grade, gravel, raise, level, repair, amend, pave, or cover, with broken or pounded stone, plank, or other material, all streets, alleys, lanes, highways, public grounds, or sidewalks in said city, and such designated portions of any street, alley, lane, or highway in said city, as the common council, by a majority vote of all the aldermen elect, shall by resolution declare to be a necessary public improvement, whether the same has previously been graded, graveled, raised, leveled, repaired, amended, paved, or covered as aforesaid, or not: *Provided*, That the common council shall not have authority to declare the grading or paving of any street, lane, alley, or highway a necessary public improvement, unless it shall have been petitioned so to do by the owners of a majority of all property on said street, lane, alley, or highway, or designated portion thereof, proposed to be improved, residing in the city of Grand Rapids, after the grade shall have been established; but this proviso shall not apply when said common council shall, by a vote of five-sixths of all the members elect of said common council, declare such grading or paving a necessary public improvement."

The charter contains the following further provisions:

"Sec. 6. Said board of public works is hereby

empowered to determine and establish the grade lines of all streets, highways, lanes, alleys, sidewalks, and public grounds in said city; to locate all necessary sewers, drains, culverts, vaults, arches, and bridges, wells, pumps, and reservoirs in said city; to cause to be graded, graveled, paved, planked, or covered with other materials all such streets, highways, lanes, alleys, sidewalks, and public grounds in said city, and to construct all such main and lateral sewers, drains, culverts, vaults, arches, and bridges, wells, pumps, and reservoirs, in said city, as the common council of the city of Grand Rapids shall by resolution declare to be necessary improvements.

"SEC. 7. Said board of public works shall have charge and control of the erection and construction of engine-houses, city hall, and other public buildings, except school-houses, in said city. In the erection of public buildings, and in the grading, graveling, paving, planking, or covering with other material any street, highway, lane, alley, or public ground, and in constructing sewers, drains, and other public works or improvements, including works for supplying said city with water, said board shall advertise for proposals to execute the work, and for materials, according to plans and specifications adopted by said board, and may contract with the lowest responsible bidder: *Provided*, said board shall require security for the performance of proposals tendered to said board, if the bid is accepted, and security for the performance of contracts: *And provided*, it shall be at the option of the board to reject any or all bids or proposals made; and, if all bids are rejected, shall thereupon readvertise for proposals to execute the work, and for materials, as often as may be necessary, unless some responsible party will take the contract at the lowest bid previously offered, which the board may accept if, in their judgment, it is for the best interests of the city.

"SEC. 8. When the common council of said city decide that the construction of any public work in said city is a necessary improvement, the board of public works, with all convenient dispatch, shall determine as to the particular kind and quantity of materials to be used therefor, and estimate the probable cost and expense of such work, and of the materials to be used, in detail, and cause to be prepared, so far as necessary, plans and specifications for such work, and report their estimate to the common council as a basis for assessing or otherwise raising,

.according to law, the funds necessary to enable the board to go forward and complete such work.

"Sec. 9. The paving, grading, graveling, planking, or covering with other materials, of all streets, highways, .alleys, lanes, sidewalks, and other public places, the building and construction of all sewers, drains, culverts, .arches, and bridges, wells, and reservoirs, and the erection of public buildings and works, which the common ·council shall by resolution declare to be necessary improvements, shall be done under the direction and supervision of the board of public works, and upon contracts .and under plans and specifications to be prepared by the city surveyor, and approved by such board; and all moneys raised or appropriated by the common council for .such purposes shall be expended by said board of public works for the purposes designed, so far as shall be necessary, and to be drawn from time to time from the appropriate fund, by order of the council, upon ·estimates of amounts earned or payable, to be made by the board and reported to the council in accordance with such contract, and no money shall be drawn from the city treasury under this act except upon the order of the common council. All contracts prepared in accordance with this section, or any section of this act, or the act of which this act is amendatory, shall be first submitted to the common council of said city for approval, before the adoption and execution thereof; and the said council shall have power to reject said contracts, if it shall see fit so to do."

Under these provisions, a majority of all the resident property-owners on Grandville avenue, between Bartlett street and Hall street, petitioned the common council to ·cause said street to be graded, graveled, and the gutters thereof paved with cobble-stone, with vertical curb; and a petition was also presented to the common council by .a majority of the residents of Erie street, asking for the improvement by paving with cobble-stone; with Medina stone curb. These petitions were referred to the proper ·committee, who reported thereon. The board of public works furnished to the common council the required

estimates, and the common council adopted the following resolutions:

"*Resolved*, by the common council of the city of Grand Rapids, that the grading and graveling of Grandville avenue, a public street in the city of Grand Rapids, from the center line of Bartlett street, a public street in said city, to the north line of Hall street, a public street in said city, including the construction of a vertical stone curb in said described portion of said Grandville avenue, and also including the construction of the necessary bridges, culverts, paved gutters, cross-walks, man-holes, catch-basins, approaches, and cess-pools in said described portion of said Grandville avenue, is a necessary public improvement."

"*Resolved*, by the common council of the city of Grand Rapids, that the grading and paving with cobble-stones of Erie street, a public street in the city of Grand Rapids, from Canal street, a public street in said city, to Bank street, a public street in said city, including the construction of a vertical Medina stone curb in said described portion of said Erie street, and also including the construction of the necessary bridges, culverts, gutters, cross-walks, man-holes, catch-basins, approaches, and cess-pools in said described portion of said Erie street, is a necessary improvement."

The board of public works declined to proceed with the work, saying in the Grandville avenue case that—

"Grandville avenue is one of the most important thoroughfares in the city of Grand Rapids, the travel upon which is continuous and heavy. The material prescribed in the resolution for the improvement of this street (especially from Bartlett street to Fifth avenue, the portion of said avenue in which the water-mains are laid, and is sewered) is not, in the judgment of the board of public works, such as the importance of the work demands; and, as the board is the judge of material to be used in the improvement of streets, we respectfully decline to proceed with the work under the resolution above mentioned."

In the Erie street case it was said that—

"The determination of the kind and quality of material to be used in paving streets belongs to the board of public works. At a meeting of said board held Saturday, May 16, 1891, it was decided not to proceed further with said improvement under the resolution above referred to, as the materials prescribed are not, in the judgment of the board, such as the improvement requires."

It was the evident intention of the Legislature to provide a way in which resident owners of property could procure the pavement of streets, to afford the best measure of protection to such owners against unwarranted burdens, and to provide a way in which streets could be improved without the concurrence of the resident owners if the necessities of any particular case demanded such improvement. Clearly, the intention was to prevent the common council from imposing a burden upon the owners without the consent of such owners, unless by a five-sixth vote of the aldermen elect. It will not be seriously urged, if the protection of the owners against burdens which they did not care to assume was the purpose of the restriction upon the powers of the council, that, in case the owners petitioned for a certain kind of pavement, the council could impose a different and more expensive pavement upon them, without the necessary five-sixths vote. Inasmuch as the council has the right, in its discretion, to refuse to grant the prayer of the petition, the public is protected. It was clearly not the intention of the Legislature to afford a way in which owners could procure the improvement of the streets in front of their property, through the common council, and then to empower the board of public works to block the improvement, and force the common council to declare some other kind of pavement a public necessity. Nor was it the intention of the Legislature to empower the board of public works arbitrarily to determine the general character of public improvements. It is difficult

to imagine how the common council could intelligently declare a work to be a necessary improvement without any reference to the general character of such work. The same provisions apply to all public improvements. A resolution declaring that a city hall, an engine-house, a police station, or a sewer was a necessary improvement, without referring to cost, size, capacity, or general character, would not satisfy even the letter of the charter. These considerations must enter into the determination of the question of the necessity. A building of given dimensions might be inadequate for one locality, and be too large for another; and to allow the board of public works to determine either question would practically empower that body to determine the question of the necessity of the improvement.

It is unquestionably the duty of the council to avail itself of whatever information or knowledge the board of public works possesses, but the authority for these expenditures must originate with the common council, and that authority includes the right to determine the question of cost, dimensions, and general character. If the board has the power to defeat the expressed will of the property-owners, and the determination of a majority of the council, because it does not consider the pavement adequate, then it may defeat the determination arrived at by a five-sixths vote. The Legislature did not intend to vest this power in the board of public works, even though it be conceded that the Legislature could divest the council of such power. The authority to determine the "particular kind and quantity of materials" has reference to detail, and not to the general character of the work. The use of the word "particular" in that connection is significant, and the evident intention of the Legislature was to empower the board of public works to provide detail where the same was necessary. If the owners should

petition for a cedar block pavement, and the common council-should grant their prayer, the specifications therefor would necessarily involve detail as to soundness, diameter, and length of blocks. It will not be insisted that the board might substitute oak or pine for cedar. If a sand foundation was suggested, they could not substitute concrete, although they might name the particular kind of sand. It does not follow that, because they are empowered to determine the particular kind of material, they may change the character of the work, or any substantial element of it. The size of the cobble-stone in the Erie-street case affected materially the character of the pavement, and the selection of Medina stone was as much a matter of discretion as the selection of Ionia or Lake Superior stone for a public building would have been, and the selection of either would involve detail as to size, facing, setting, etc.

The writs must issue as prayed.

The other Justices concurred.